UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

BYRON ABNER, # 383118,

       Petitioner,

v.                                                     Case Number: 10-cv-13071
                                                     Honorable Victoria A. Roberts

DEBRA SCUTT,

       Respondent.
_____/

## OPINION AND ORDER
## GRANTING RESPONDENT'S MOTION FOR SUMMARY JUDGMENT THEREBY DENYING PETITIONER'S PETITION FOR WRIT OF HABEAS CORPUS AND DECLINING TO ISSUE PETITIONER A CERTIFICATE OF APPEALABILITY

This is a habeas case under 28 U.S.C. § 2254. On August 3, 2010, Petitioner Byron Abner, a state inmate at the G. Robert Cotton Correctional Facility in Jackson, Michigan, through counsel, filed this Habeas Petition in which he challenges his 2001 conviction for first-degree felony murder, MICH. COMP. LAWS § 750.316(1)(b),[1] imposed following a bench trial in Wayne County Circuit Court. He was sentenced to life in prison without the possibility of parole.

Rather than filing an Answer to the Petition, on February 2, 2011, Respondent filed a Motion for Summary Judgment, arguing that Petitioner's Habeas Petition was not filed within the applicable statute of limitations period under 28 U.S.C. § 2244(d)(1). In his Reply to that Motion, Petitioner concedes that his Petition was untimely but asserts that it should be equitably tolled because "[f]irst and foremost, [he] is indigent" and was not able to retain an attorney within the appropriate time period, and because he "underwent major abdominal cancer

---

[1] First-degree child abuse was the predicate offense, MICH. COMP. LAWS § 750.136b(2).

surgery." Petitioner's Answer to Respondent's Motion for Summary Judgment, 3-4.

The Court grants Respondent's Motion for Summary Judgment and therefore denies Petitioner's Habeas Petition. The Court also declines to issue Petitioner a Certificate of Appealability.

## I. BACKGROUND

The Michigan Court of Appeals set forth the underlying facts of the case, which are presumed correct on habeas review, *see Monroe v. Smith*, 197 F.Supp.2d 753, 758 (E.D. Mich. 2001), *aff'd*, 41 F.App'x 730 (6th Cir. 2002):

> This appeal arises out of defendant's conviction for the death of three-year-old Domari Spivey, born May 17, 1996. Domari began living with defendant in August 1999, with the permission of his nineteen-year-old mother Ebony Spivey. Defendant apparently agreed to watch Domari because Ebony Spivey was in the process of moving and had started a new job. Barbara Spivey, Ebony Spivey's mother, was dating defendant. Defendant and Barbara Spivey had a child together, Byron Abner, Jr., but did not live together.
>
> Domari's great grandmother, Mary Jean Carter, testified that Domari and his mother lived with her before Domari went to defendant's house in August. During the time that Domari lived with her, she claimed that she never saw him with any injuries or open wounds to his head. Ebony Spivey testified that the last time she saw her son alive was when he went to stay with defendant in August 1999. Before that time, she claimed that Domari did not have any open wounds or injuries to his head. She told the police that defendant had never mistreated Domari in the past.
>
> On November 2, 1999, defendant called 911 and reported that Domari was unconscious. When the police responded, they found Domari inside the home with several bruises and scratch marks on him. In particular, the police noticed a large sore on Domari's head. Defendant explained to the police that this sore was from an incident that occurred a month earlier when Domari fell off the porch. When asked whether he ever took Domari to the hospital for his injuries, defendant gave the police conflicting stories and ultimately admitted that he had not taken him to the hospital. He explained to the police that Domari was sleeping when he checked on him around 8:00 p.m. and then later changed the time to 9:00 p.m. Defendant stated that it was not until the following morning that he became aware that Domari was not breathing. Officer Nicole Lambert

testified that defendant appeared unconcerned about the situation. Defendant was subsequently placed under arrest.

During his first interview with the police, defendant claimed that Domari was sick the past few days with flu-like symptoms and had not been eating well. When asked how he disciplined Domari, defendant stated that he had whipped him on three occasions with a belt and a few times with his hand. In a second statement to the police, however, defendant recanted his story about Domari falling off the porch and admitted that the injury on Domari's head occurred when defendant whipped him with a belt. Defendant stated that he struck Domari about four times before realizing that the belt buckle was hitting Domari on the head. He claimed that Domari fell down when he was hit with the belt and was bleeding from the top of his head. Defendant did not take Domari to the hospital. He explained that he did not have Domari's insurance card and thought that antibiotic cream would be sufficient. Defendant stated that he lied about the porch incident because he did not want the police to think he would hurt Domari on purpose.

Byron Abner, Jr., Domari's uncle, was nine years of age when Domari died. He testified that he lived alone with defendant and Domari in November 1999. The night before Domari's death, Byron claimed that defendant took him to a friend's house to spend the night because defendant was going shopping for Christmas presents. He was not home the morning of Domari's death and stated that Domari was riding his tricycle the last time he saw him alive.

Byron recalled seeing Domari fall off his tricycle a few weeks before his death. He further stated that he saw the sore on Domari's head and that defendant told him it was from the cat. According to Byron, Domari walked slower and bent forward with the sore on his head. When asked whether he ever saw defendant strike Domari, he replied that he saw defendant hit him with a belt but not with the belt buckle. He also claimed that he saw defendant hit Domari in the chest with his fist and that defendant would hit Domari on the hand with a flyswatter.

Wayne County Deputy Chief Medical Examiner Carl Schmidt performed the autopsy on Domari's body. Domari was 3 feet 4 inches tall and weighed twenty-seven pounds. An external examination of his body revealed a large erosion that covered a considerable portion of Domari's scalp. At its largest point, this wound measured 4 3/4 x 2 inches. Dr. Schmidt stated that the condition of the wound indicated that it had been inflicted about four to six weeks before Domari's death. But the erosion of the wound occurred about one to two weeks before his death. Dr. Schmidt opined that the original wound could have expanded from repeated trauma to that area and/or neglect. He also observed multiple semi-circular scars throughout Domari's scalp and neck. After examining defendant's belt buckle, which was decorated with several coins, Dr.

> Schmidt testified that it could have caused the semi-circular injuries on Domari. Based on the scarring, Dr. Schmidt estimated that Domari sustained four or five blows to the head.
>
> Other external injuries that Dr. Schmidt observed included: parallel linear scars on the left side of Domari's face; a half inch long healing scrape over his right eyebrow; a recent bruise to his lower lip; several scars on his right nipple; a scrape on the middle of his back; a scar on his left buttock; a healing scrape on the back of his right knee; and a scrape on the right knee itself. Dr. Schmidt acknowledged that a cat could have caused the scarring on the right nipple.
>
> The internal examination revealed that Domari suffered from intense cerebral edema or swelling of the brain. Dr. Schmidt explained that Domari's brain had swollen to the point where the sutures of his skull had begun to separate. According to Dr. Schmidt, tremendous violence to Domari's head was needed to cause this condition. He testified that the trauma occurred approximately twelve to twenty-four hours before Domari's death. Further examination revealed a hemorrhage to the sheath of Domari's perioptic nerve. Dr. Schmidt testified that this type of injury is a result of violent shaking or the sudden stop of an individual's head hitting a firm surface. He also noted the existence of a subcutaneous hemorrhage to Domari's left hip and the back of his left leg. Dr. Schmidt stated that both these injuries were recent.
>
> Dr. Schmidt ultimately determined that the wound on top of Domari's head was not the cause of his death, but was from a separate event. Rather, he claimed that the swelling in Domari's brain was the cause of death and that it was the result of repeated direct blunt force trauma to Domari's head within the past twelve to twenty-four hours. He based this opinion on the diffuse hemorrhaging throughout Domari's scalp. According to Dr. Schmidt, the diffuse hemorrhaging was inconsistent with a single blow to the head or accidental injury from falling off a bike or porch. While he could not say how many blows to the head Domari received or the instrument that was used, Dr. Schmidt expressed certainty that Domari sustained multiple blows from a broad-based surface.

*People v. Abner*, No. 241569, 2004 WL 594948, at *1-3 (Mich.Ct.App. Mar. 25, 2004)

(footnotes omitted).

Following his sentencing, Petitioner filed a Direct Appeal with the Michigan Court of Appeals, alleging that there was insufficient evidence to support his conviction for felony murder and that his statement to the police should have been suppressed because there was no probable

cause for his arrest. The Court of Appeals affirmed his conviction and sentence. *Abner*, 2004 WL 594948, at *1-5.

Petitioner then filed an Application for Leave to Appeal that decision with the Michigan Supreme Court, raising the same claims. The Supreme Court denied his Application on September 28, 2004. *People v. Abner*, 471 Mich. 886; 688 N.W.2d 502 (2004).

Petitioner did not filed a Writ of Certiorari with the United States Supreme Court.

Rather, almost four years later, on April 2, 2008, Petitioner filed a Post-Conviction Motion with the trial court, raising the following three claims: (1) insufficient evidence of premeditation, (2) insufficient evidence at the preliminary examination, and (3) insufficient evidence at trial to prove his guilt beyond a reasonable doubt. The trial court denied the Motion on June 17, 2008. *People v. Abner*, No. 00-5798-01 (Wayne County Circuit Court, June 17, 2008). Petitioner filed a Motion for Reconsideration and an Amended Motion. Those Motions were denied on July 11, 2008.

Petitioner filed an Application for Leave to Appeal the trial court's decision with the Court of Appeals, which was denied on January 7, 2009. *People v. Abner*, No. 288122 (Mich.Ct.App. Jan. 7, 2009). His Application for Leave to Appeal the Court of Appeals's decision, filed with the Michigan Supreme Court, was denied on September 11, 2009. *People v. Abner*, 485 Mich. 862; 771 N.W.2d 765 (2009).

Petitioner filed this Habeas Petition on August 3, 2010, alleging that his due process right to a speedy trial was violated, his trial counsel was ineffective for failing to move for dismissal of the charge because of the unreasonable delay, and the prosecutor committed misconduct by informing the trial court of facts not in evidence.

## II. STANDARD

The Antiterrorism and Effective Death Penalty Act of 1996, Pub.L. No. 104-132, 110 Stat. 1214 (AEDPA) applies to all habeas petitions filed after the Act's effective date, April 24, 1996, and imposes a one-year limitations period for habeas corpus petitions. 28 U.S.C. § 2244(d)(1). Petitioner's Application for Habeas Corpus Relief was filed after April 24, 1996, and thus the provisions of the AEDPA, including the limitations period for filing an application for habeas corpus relief, apply to Petitioner's Application. *Lindh v. Murphy*, 521 U.S. 320, 337 (1997). Title 28 of the United States Code, sections 2244(d)(1)(A) through (D) state in pertinent part:

> (1) A 1-year period of limitation shall apply to an application for a writ of habeas corpus by a person in custody pursuant to the judgment of a State court. The limitation period shall run from the latest of –
>
> (A) the date on which the judgment became final by the conclusion of direct review or the expiration of the time for seeking such review;
>
> (B) the date on which the impediment to filing an application created by State action in violation of the Constitution or laws of the United States is removed if the applicant was prevented from filing by such State action;
>
> (C) the date on which the constitutional right asserted was originally recognized by the Supreme Court if the right has been newly recognized by the Supreme Court and made retroactively applicable to cases on collateral review; or
>
> (D) the date on which the factual predicate of the claim or claims presented could have been discovered through the exercise of due diligence.

Petitioner is not relying on a new and retroactive constitutional right (28 U.S.C. § 2244(d)(1)(C)) or on newly discovered facts (28 U.S.C. § 2244(d)(1)(D)), and he has not alleged

that the State created an impediment to filing a timely application (28 U.S.C. § 2244(d)(1)(B)). Consequently, the only applicable subsection for determining when the statute of limitations began to run is 28 U.S.C. § 2244(d)(1)(A): "the date on which the judgment became final by the conclusion of direct review or the expiration of the time for seeking such review."

"Direct review," for purposes of subsection 2244(d)(1)(A) concludes when the availability of direct appeal to the state courts and to the United States Supreme Court has been exhausted. *Jimenez v. Quarterman*, 555 U.S. 113, ----, 129 S.Ct. 681, 685 (2009). "Until that time, the 'process of direct review' has not 'com[e] to an end' and 'a presumption of finality and legality' cannot yet have 'attache[d] to the conviction and sentence.'" *Id.*, 129 S.Ct. at 685-86 (quoting *Barefoot v. Estelle*, 463 U.S. 880, 887 (1983)).

### III.  DISCUSSION

#### A.  Timeliness of Petition

Petitioner did not file his Habeas Petition within the statute of limitations period. The Michigan Supreme Court denied his Application on September 28, 2004. He then had ninety days from that Order, or until December 29, 2004, in which to seek a Writ of Certiorari with the United States Supreme Court. SUP.CT.R. 13. Thus, for statute of limitations purposes, Petitioner's conviction became final on or about December 29, 2004. *Sherwood v. Prelesnik*, 579 F.3d 581, 585 (6th Cir. 2009) (citing *Bronaugh v. Ohio*, 235 F.3d 280, 283 (6th Cir. 2000), and *Lawrence v. Florida*, 549 U.S. 327, 332-33 (2007)). The limitations period commenced the following day, December 30, 2004, and continued to run uninterrupted until it expired on December 30, 2005. Accordingly, Petitioner was required to file his Habeas Petition on or before

December 30, 2005, excluding any time during which a properly filed Post-Conviction Motion was pending in accordance with 28 U.S.C. § 2244 (d)(2).

Petitioner did not file his Post-Conviction Motion with the trial court until April 2, 2008. Thus, the one-year limitations period had expired almost three years before he sought state post-conviction or collateral review.[2] A state court post-conviction motion filed after the expiration of the one-year limitations period cannot toll that period because there is no period remaining to be tolled. *See Jurado v. Burt*, 337 F.3d 638, 641 (6th Cir. 2003) (citation omitted); *Hargrove v. Brigano*, 300 F.3d 717, 718 n.1 (6th Cir. 2002). Petitioner's Post-Conviction Motion did not toll the running of the statute of limitations.

Petitioner filed his Habeas Petition on August 3, 2010, almost five years after the expiration of the one-year statute of limitations period. Hence, Petitioner is barred from habeas relief by the untimely filing of his Petition.

Petitioner concedes that his Habeas Petition is untimely. He nevertheless urges the Court to equitably toll the limitations period for the following reasons: his indigence prevented him from retaining an attorney in time to file his Post-Conviction Motion, and his physical illness prevented him from properly filing because he was hospitalized during that time period.

### B. Equitable Tolling

The United States Supreme Court has confirmed that the one-year statute of limitations is not a jurisdictional bar and is subject to equitable tolling. *Holland v. Florida*, --- U.S. ----, 130

---

[2]Recently, in *Wall v. Kholi*, --- S.Ct. ---, 2011 WL 767700, at *406 (Mar. 7, 2011), the United States Supreme Court defined "collateral review," as it applied to Rhode Island's Rule 35–a motion to reduce sentence. The Court held that "[c]ollateral" review is review . . . that is not part of direct review." It found Rhode Island's Rule 35 to be an application for "collateral review' that triggers AEDPA's tolling provision.

S.Ct. 2549, 2560 (2010). The Supreme Court held that a habeas petitioner is entitled to equitable tolling "only if he [or she] shows '(1) that he [or she] has been pursuing his [or her] rights diligently, and (2) that some extraordinary circumstance stood in his [or her] way' and prevented timely filing." *Id.* at 2562 (quoting *Pace v. DiGuglielmo*, 544 U.S. 408, 418 (2005)). "The petitioner has the burden of demonstrating that he [or she] is entitled to equitable tolling." *Allen v. Yukins*, 366 F.3d 396, 401 (6th Cir. 2004) (quoting *McClendon v. Sherman*, 329 F.3d 490, 494 (6th Cir. 2003) (quoting *Griffin v. Rogers*, 308 F.3d 647, 653 (6th Cir. 2002) (citations omitted)).

When deciding whether equitable tolling should apply, courts in this Circuit evaluate the following factors: (1) the petitioner's lack of notice of the filing requirement; (2) the petitioner's lack of constructive knowledge of the filing requirement; (3) diligence in pursuing one's rights; (4) absence of prejudice to the respondent; and (5) the petitioner's reasonableness in remaining ignorant of the legal requirement for filing his claim. *Andrews v. Orr*, 852 F.2d 146, 151 (6th Cir. 1988) (citations omitted) . These five factors are not comprehensive nor is each of the five factors relevant in all cases. Instead, courts must consider equitable tolling on a case-by-case basis. *Allen*, 366 F.3d at 401 (citation omitted).

First, Petitioner relies on his *pro se* status as a basis for equitable tolling. Claims that a petitioner did not have professional legal assistance are not an extraordinary circumstance which would toll the statute of limitations. *Holloway v. Jones*, 166 F. Supp. 2d 1185, 1189 (E.D. Mich. 2001) (citing *Henderson v. Johnson*, 1 F.Supp.2d 650, 656 (N.D. Tex. 1998)); *see also Dunlop v. Scutt*, No. 09-10168-BC, 2009 WL 3059145, at*3 (E.D. Mich. Sept. 24, 2009) (ignorance of the law and *pro se* status are not sufficient grounds to warrant equitable tolling) (citations omitted); *Bilodeau v. Angelone*, 39 F.Supp.2d 652, 659 & n.1 (E.D. Va. 1999) (petitioner's claim that the

9

delay in filing the petition resulted, because he was seeking legal assistance would neither establish excusable neglect, so as to warrant an enlargement of time to file the petition, or support the equitable tolling of the statute of limitations).

Thus, the fact that Petitioner was unable to retain counsel in a timely fashion to file his Habeas Petition is not a circumstance that would justify the equitable tolling of the statute of limitations. Moreover, there is no constitutional right to counsel on collateral review. *See, e.g., Lawrence v. Florida*, 549 U.S. 327, 336-37 (2007); *Holloway*, 166 F. Supp. 2d at 1189.

Petitioner had ample time to pursue post-conviction and habeas relief. Instead he waited three years after his direct appeals before pursuing his state post-conviction relief in 2008, and almost five years before pursuing habeas relief in 2010.

Second, Petitioner also cannot show that he is entitled to equitable tolling based on his alleged physical illness. Although several courts of appeal have held that the mental incapacity of a petitioner warrants equitable tolling of a habeas statute of limitations, few have held that the physical incapacity of the petitioner warrants such. *See*, e.g., *Bolarinwa v. Williams*, 593 F.3d 226, 232 (2d Cir. 2010) ("[Petitioner] must offer a 'particularized description of how [his] condition adversely affected [his] capacity to function generally or in relationship to the pursuit of [his] rights.'") (citation omitted)); *Hunter v. Ferrell*, 587 F.3d 1304, 1308 (11th Cir. 2009) ("[T]he alleged mental impairment must have affected the petitioner's ability to file a timely habeas petition."); *Laws v. Lamarque*, 351 F.3d 919, 923 (9th Cir. 2003) ("Where a habeas petitioner's mental incompetence in fact caused him to fail to meet the AEDPA filing deadline, his delay was caused by an 'extraordinary circumstance beyond [his] control,' and the deadline should be equitably tolled."). *See also Gray v. Potter*, 115 F.App'x 891, 894 (7th Cir. 2004) ("A

plaintiff whose mental or physical impairment prevents him or her from complying with the statute of limitations may invoke equitable tolling.") (citation omitted).

"[P]etitioner has the burden to show that these health problems rendered him unable to pursue his rights during the one-year time period." *Rhodes v. Senkowski*, 82 F.Supp.2d 160, 173 (S.D.N.Y. 2000); *see also Moody v. Bayliner Marine Corp.*, 664 F.Supp. 232, 237 (E.D.N.C. 1987) (equitable tolling available only when plaintiff is so incapacitated that he was "incapable of filing any claim within the requisite time periods.").

Petitioner has not met his burden. He has failed to show that his physical condition affected his ability to timely file his Habeas Petition. Although he alleges that, soon after the Michigan Supreme Court denied his Application, he underwent four surgeries for abdominal cancer, he has failed to support his claim. The only support Petitioner provides is that his counsel's second visit with him was when he was in the hospital. Petitioner neither gives the dates of his hospitalizations nor does he submit any medical documentation indicating such.

Rather, it appears to the Court that Petitioner's main argument is that he could not retain an attorney to assist him in his post-conviction proceedings, or his habeas proceedings for that matter, because of his indigent status. In fact, Petitioner refers to this argument as his "[f]irst and foremost." His argument rests on the fact that he was not able to gather the money necessary to retain an attorney until a family friend offered her assistance in 2007. As stated, *pro se* status is not a basis for invoking the doctrine of equitable tolling. *See Holloway*, 166 F.Supp.2d at 1189.

The Court concludes that Petitioner has failed to demonstrate that his *pro se* status or his health problems rendered him unable to pursue his rights within the one-year period.

Finally, the Court must decide whether equitable tolling should apply to Petitioner's case on the ground of actual innocence. The applicability of equitable tolling on the ground of actual innocence has yet to be decided by the Supreme Court but recognized by the Sixth Circuit. *Souter v. Jones*, 395 F.3d 577, 599 (6th Cir. 2005). As explained in *Souter*, to support a claim of actual innocence, a petitioner in a collateral proceeding "must demonstrate that, in light of all the evidence, it is more likely than not that no reasonable juror would have convicted him." *Bousley v. United States*, 523 U.S. 614, 623 (1998) (quoting *Schlup v. Delo*, 513 U.S. 298, 327-28 (1995)). A valid claim of actual innocence requires a petitioner "to support his allegations of constitutional error with new reliable evidence-whether it be exculpatory scientific evidence, trustworthy eyewitness account, or critical physical evidence-that was not presented at trial." *Schlup*, 513 U.S. at 324. Actual innocence means "factual innocence, not mere legal insufficiency." *Bousley*, 523 U.S. at 623.

Petitioner has made no such showing. Therefore, he is not entitled to equitable tolling of the one-year limitations period on the basis of actual innocence.

The Court concludes that Petitioner is not entitled to equitable tolling under either *Holland* or *Souter*. Petitioner cannot establish that he was pursuing his rights diligently and that some extraordinary circumstance stood in his way. The Court also finds that he has not submitted any new reliable evidence to support a claim of actual innocence.

Having failed to establish entitlement to either statutory or equitable tolling, Petitioner's Habeas Petition is dismissed as untimely.

### C.  Certificate of Appealability

The Court will also decline to issue a Certificate of Appealability (COA) to Petitioner.  In order to obtain a COA, a prisoner must make a substantial showing of the denial of a constitutional right.  28 U.S.C. § 2253(c)(2).

A COA may be issued "only if the applicant has made a substantial showing of the denial of a constitutional right."  28 U.S.C. § 2253(c)(2).  "The district court must issue or deny a [COA] when it enters a final order adverse to the applicant."  Rules Governing § 2254 Cases, Rule 11(a).

When a district court denies a habeas petition on procedural grounds without reaching the prisoner's underlying constitutional claims, a COA should issue, and an appeal of the district court's order may be taken, if the petitioner shows that jurists of reason would find it debatable whether the petitioner states a valid claim of the denial of a constitutional right, and that jurists of reason would find it debatable whether the district court was correct in its procedural ruling.  *Slack v. McDaniel*, 529 U.S. 473, 484 (2000).  When a plain procedural bar is present and the district court is correct to invoke it to dispose of the case, a reasonable jurist could not conclude either that the district court erred in dismissing the petition or that the petition should be allowed to proceed further.  In such a circumstance, no appeal would be warranted.  *Id.*

The Court declines to issue Petitioner a COA; reasonable jurists would not find it debatable whether this Court was correct in determining that Petitioner had filed his Habeas Petition outside of the one year limitations period.  *See Grayson v. Grayson*, 185 F.Supp.2d 747, 753 (E.D. Mich. 2002).

## IV.  CONCLUSION

For the reasons stated, the Court concludes that Petitioner failed to file his Habeas Petition within the statue of limitations period.  Accordingly, the Court: (1) **GRANTS** Respondent's Motion for Summary Judgment [Dkt. # 5]; (2) **DENIES** Petitioner's "Petition for Writ of Habeas Corpus" [Dkt. # 1] with prejudice; and (3) **DECLINES** to issue Petitioner a COA.

IT IS ORDERED.

s/Victoria A. Roberts
Victoria A. Roberts
United States District Judge

Dated:  March 8, 2011

The undersigned certifies that a copy of this document was served on the attorneys of record by electronic means or U.S. Mail on March 8, 2011.

s/Carol A. Pinegar
Deputy Clerk